KAAHANUI LOPEZ and ANTONE J. LOPEZ, her husband *vs.* MARGARET SOY YOUNG and SOY YOUNG, her husband; MARIA KAAI and KAHOIWAI KAAI, her husband.

SPECIFIC PERFORMANCE. APPEAL FROM JUDD, C.J.

*HEARING, MARCH 16, 1892. DECISION, JUNE 16, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

A general power of attorney will not authorize the attorney to convey land, unless it contains words clearly granting such authority.

When several parties join in a power of attorney authorizing the agent to settle up an estate in which they are all interested, the agent receives no authority by such instrument to act in matters connected with the estate in which the interests of his principals conflict with each other; for instance, to admeasure the dower of one of the principals in the estate in question, unless such intention is clearly expressed.

OPINION OF THE COURT, BY DOLE, J.

The opinion of the Chief Justice, upon which the decree dismissing the bill is based, is as follows:

This is a bill for specific performance. The substantial facts are as follows: The plaintiff, Kaahanui, is the widow of one Henry Gordon who deceased intestate in 1879. The defendants Margaret and Maria are his daughters and surviving heirs at law. On the 1st November, 1880, the widow, and her then husband, Maria, Margaret and Emeline, with their respective husbands, signed a power of attorney to Mr. A. J. Cartwright, empowering him "to represent us and each of us in the settlement of the estate of the late Henry Gordon now pending in the Supreme Court of the Hawaiian Islands and also upon the settlement of the said estate, to receive from Wm. R. Castle, the administrator of the estate of the said Henry Gordon or his successors, our and each of our

* This decision, inadvertently left out of Vol. 8, is inserted here as properly preceding the one on page 117, *post*.

distributive share of the said estate, and also to make such arrangements and settlements in regard to said estate as he may deem best for our interests, and also to make, sign, seal and deliver all such documents, receipts and releases as may be necessary and proper in the premises, under seal or otherwise; giving and granting unto our said attorney full power and authority to do and perform all and every act matter and thing necessary and proper to be done in and about the settlement of the said estate and the receiving of our distributive shares in said estate as fully and to all intents and purposes as we might or could do if personally present hereby ratifying," &c. A son, Eli Gordon, gave a power of attorney to W. R. Castle. The estate of H. Gordon consisted principally of a half interest in a sugar plantation at Waialua, Oahu, known as the Halstead & Gordon plantation. Besides this there was a house lot and buildings thereon at Lahaina, Maui, granted to Hikiau by Royal Patent No. 595, and owned by H. Gordon at the time of his decease. After considerable negotiation the interest of the estate of H. Gordon in the plantation was sold to Mr. Halstead for $27,500, and Mr. Cartwright, under this power of attorney agreed in writing that Kaahanui, in consideration of her release of dower, should have $8500 in cash and that the children should quit claim to this widow the Lahaina lot. This agreement is dated the 6th July, 1881, signed by Mr. Cartwright as attorney in fact for Maria, Margaret Emeline and their respective husbands and Kaahanui and her husband, and by W. R. Castle as attorney in fact for Eli Gordon, and this agreement is recorded. In pursuance of this a deed was drafted bearing the same date as the agreement. It was signed by Eli Gordon by his attorney in fact W. R. Castle, but was not signed by Mr. Cartwright for the other heirs, and was kept by him in abeyance until the tenant of the widow of the Lahaina premises was notified by Soy Young, husband of Margaret, to deliver possession to him. This was in February last, and hence this suit for specific performance.

It is claimed by the defendants that the agreement to

release the Lahaina premises to the widow was made by Mr. Cartwright in excess of his authority. Formal letters of attorney are subjected to a strict construction and are never interpreted to authorize acts not obviously within the scope of the particular matter to which they refer. General language when used in connection with a particular subject matter will be presumed to be used in subordination to that matter. Story Agency, Chap. VI. What was the object of the power of attorney? Primarily it was to empower the attorney to receive from the administrator of the deceased ancestor the distributive shares of the widow and heirs— and to make " such arrangements and settlements in regard to said estate as he may deem best for our interests." Did the power authorize the attorney to divide and apportion between the heirs the property of the intestate when received by him from the administrator?

By reference to the records of the probate court in evidence, the plantation interest of the deceased intestate was sold by order of court and the proceeds distributed by the court on the 4th May, 1881, as follows : The widow to take one third of the personal property absolutely and her dower in the realty as may be apportioned, and the children two-thirds of the personal property and the whole of the realty absolutely, and the question of Emeline's share to be considered. The amount of money which each heir should have was not to be determined by the attorney under the letter of attorney, but by the court.

But the attorney was to receive and receipt for the shares of each and to hold them subject to their order. Was he authorized to do any more? I think not. The language used, " to make such arrangements and settlements in regard to the *estate* as he shall deem best for their interest," does not confer upon the attorney the power to bind the heirs by an agreement that the widow should have the Lahaina land in fee as part of her dower. The object of the letter of attorney was to empower the attorney to act for the heirs in the settlement of the estate. It was mainly partnership

property and involved in debt and presumably required much negotiation with the administrator and surviving partner in order to effect its settlement. The language used does not authorize the attorney to sell and convey the interests of the heirs in the real estate of their intestate ancestor, and the power of attorney must have this effect given to it to hold the respondents to a specific performance of the agreement made under it.

I have come to the conclusion that the agreement cannot be enforced and therefore dismiss the bill.

### By the Court.

We affirm the decree appealed from upon the reasoning of the foregoing opinion, and upon the following additional grounds.

Mr. Cartwright represented all of the parties in interest except Eli Gordon, under the power of attorney referred to. This was adequate authority for him to represent his principals in dealing with matters which affected their interests in the same way, such as negotiating with the partner of the deceased, if he did so negotiate with him, for the sale of the interest of the deceased in the partnership. But when he attempted to deal with matters in which the interests of his principals were hostile to each other, such as apportioning the widow's dower, he could no longer equitably act as the agent of them all, unless it should appear affirmatively that the parties fully intended the transaction as it took place and understood its nature, which is not the case. Though such a transaction is not void *ab initio*, the parties have the right within a reasonable time to avoid it. The rule is well settled both in England and the United States that a contract made by one who acts as the agent of both parties is voidable in a court of equity at the election of either principal. *(N. Y. Cen. Ins. Co. vs. Nat. Pro. Ins. Co.* 20 Barb. 470 ; Story on Agency, 7th ed. sec. 211, n. 1.)

*W. R. Castle*, for plaintiffs.

*J. A. Magoon* and *J. M. Davidson*, for defendants.